RECEIVED
USDC CLERK, CHARLESTON, SC
2006 DEC 12  A 11: 41

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William Tesar, | C. A. No. 9:05-0956-SB-RSC |
| Plaintiff, | |
| -versus- | **REPORT AND RECOMMENDATION** |
| John Potter, Postmaster General, United States Postal Service, | |
| Defendant. | |

This employment discrimination case is before the undersigned United States Magistrate Judge for a report and recommendation on the defendant's motion to dismiss under Fed. R.Civ.P. 41(b) because of Plaintiff's fraud on the court. The defendant also filed a motion for summary judgment under Fed.R.Civ.P. 56(c). Both motions were filed on October 31, 2006. 28 U.S.C. 636(b).

**PROCEDURAL HISTORY**

The plaintiff, William Tesar, proceeding pro se filed his original complaint on March 29, 2005, against his former employer Defendant, the United States Postal Service (USPS), and Rita S. Andrae, his former supervisor at the USPS, in her official capacity, and J. David Blackerby, USPS manager of Post Office operations for South Georgia, in his official capacity. Tesar amended his complaint in August 2005, and alleged violations of the Rehabilitation Act, 29 U.S.C § 701, et. seq., and the Family Medical Leave Act (FMLA), 29 U.S.C. 2601, et. seq. Specifically

he brought the following causes of action: (1) disability discrimination under the Rehabilitation Act; (2) disability harassment through a hostile work environment under the Rehabilitation Act; (3) failure to accommodate his disability under the Rehabilitation Act; (4) interference with rights under the FMLA, and (5) retaliation for exercising FMLA rights. Tesar claims he is a qualified individual based upon complex post-traumatic stress syndrome with panic attacks and diabetes. See, Amended Complaint, ¶ 23.

Tesar's wife, Ann Barbour Tesar, also noticed her appearance as an "interested party". Defendant USPS was served On May 5, 2005, and answered the complaint on June 10, 2005. The USPS also filed a motion to dismiss Andrae and Blackerby based upon insufficiency of process on June 10, 2005. On June 13, 2005, Tesar was provided a copy of the defendant's motion and was given an explanation of dismissal and summary judgment procedure as well as pertinent extracts from Rules 12 and 56 of the Federal Rules of Civil Procedure similar to that required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975). Tesar filed a response on June 27, 2005, and again on July 1, 2005, as well a motion for summary judgment with 99 pages of exhibits.

Thereafter, on July 13, 2005, a scheduling and status conference was held before the undersigned at which all dispositive motions were withdrawn with leave to refile them, and

a schedule was agreed upon by the parties. At that time, a motion by Tesar to amend his complaint was granted, and Tesar was instructed that he had to serve the individual defendants.

On August 25, 2005, the defendants answered and again moved to dismiss the individual defendants because they had not been served. Tesar was provided a copy of the motion and another Roseboro order on August 26, 2005. Tesar did not respond to the motion within thirty-four (34) days so an order was issued instructing the plaintiff to respond to the motion. Tesar did not respond. A report and recommendation by the undersigned recommending dismissal of Andrae and Blackerby was filed on October 19, 2005, and on November 16, 2005, the Honorable Sol Blatt, Jr., Senior United States District Judge, granted the motion to dismiss Andrae and Blackerby.

The USPS moved to amend the scheduling order on November 16, 2005, the motion was granted, and on December 5, 2005, an amended scheduling order was entered.

Next, on December 13, 2005, the USPS filed a motion to compel Tesar to respond to the defendant's first set of interrogatories and first request to produce documents and the undersigned scheduled a hearing on the motion for January 11, 2006. Tesar was noticed but did not appear at the hearing and the court was unsuccessful in attempting to contact Tesar at the telephone number Tesar had previously provided to the court.

However, Tesar did file an opposition to the motion by faximile during the hearing, which opposition Tesar dated December 16, 2005.  On January 31, 2006, the USPS filed a motion to strike discovery responses and for sanctions against Tesar for a variety of reasons related to Tesar's failure to participate in discovery.

Also before the hearing on January 10, 2006, the USPS filed a motion for a protective order in compliance with HIPPA to enable it to obtain records relating to the plaintiff from Dr. Laura Rosenbaum-Bloom (Bloom), the plaintiff's and Ann Barbour Tesar's psychiatrist.  On January 31, 2006, the USPS filed a motion to compel the deposition and production of documents by Dr. Bloom.  Ann Barbour Tesar filed a motion for a protective order on February 1, 2006, and the next day the plaintiff filed an opposition to the USPS' motions in regard to Dr. Bloom and his own motion for a protective order.  The USPS filed an opposition to that motion and Ann Barbour Tesar filed a reply on February 6, 2006.  The undersigned granted the USPS's motion to compel discovery requests and motion for a HIPPA protective order on February 6, 2006, and instructed Tesar to respond appropriately to Defendant's discovery requests.  That order was sent by registered mail to Tesar at the address he provided to the court, but the order was returned marked "Refused".

Discovery deadlines were again extended on February 24, 2006, on motion of the USPS.

A motions hearing on all outstanding motions was again set for March 22, 2006, and the Clerk contacted Tesar by telephone to advise him of the hearing. Tesar appeared at the hearing, all outstanding motions were resolved, and the undersigned appointed Richard A. Ferrier, Esquire, of the law firm of Nelson Mullins Riley and Scarborough, to represent the plaintiff in this action. On April 25, 2006, the defendant withdrew it's motion to strike and the USPS's motion to compel the deposition of Dr. Bloom was granted. The plaintiff named an expert witness, Dr. James C. Ballenger, a psychiatrist, on June 30, 2006.

A fourth amended scheduling order was entered on August 18, 2006, on motion of the parties. On August 21, 2006, the undersigned denied a motion by the USPS to consolidate this action with another employment discrimination case against the USPS filed by Tesar.

Tesar moved to compel more complete discovery responses on August 25, 2006, and a hearing on the motion was had before the undersigned on September 26, 2006, at which Tesar's motion to compel was granted. Tesar filed another motion to compel on September 29, 2006. A joint motion to amend the scheduling order was filed on October 5, 2006, which sought additional time to

file dispositive motions until October 31, 2006, which motion was granted.

Defendant filed the 500 page record of the administrative proceedings in this matter on October 26, 2006, and filed the instant dispositive motions on October 31, 2006. Tesar responded to the motions and oral argument before the undersigned was had on December 6, 2006. Hence it appears consideration of the motions is appropriate.

## **FACTS**

At all times relevant to the complaint, Tesar was a supervisor, EAS-18, at the Hilton Head Island Post Office, serving as supervisor of the city carriers at the main office and as supervisor of the rural carriers at a satellite office called Fairfield Station. (USPS administrative record 0072-0074).

In his verified complaint, the Plaintiff alleges claims of disability discrimination in employment pursuant to the Rehabilitation Act of 1973 and violations of the Family Medical Leave Act. Tesar considers the following as the "undisputed facts" as outlined in his motion for summary judgment filed on July 11, 2005:

> "Plaintiff provided the Postal Service with written and verbal notice of his need for FMLA-qualifying leave for the period beginning June 3, 2003, and continuing for 30 days. (Compl., Pl. Ex. 1, pp.1-5; Attached Ex. 6)
>
> Defendant Andrae was required to send the plaintiff a PS-3971 "Postal Service Leave Request"

6

and USFS <u>Publication 71</u> "Notice for Employees Requesting Leave for Conditions Covered by the Family and Medical Leave Act". PALM *513332* (Attached EL 20. p. 513.332; Attached Ex. 21, p.4,515.51).

Defendant Andrae did not send Mr. Tesar the required notice nor has she ever alleged that she sent the required notice. Defendant Andrae alleges only that she tried to call Mr. Tesar. (Attached Ex. 19, p.2).

Defendant Andrae initially approved Tesar's leave and allowed him to substitute paid sick leave for the period beginning June 3, 2003 through June 13, 2003. (Attached Ex. 9, p.2, Attached Ex. 10, pp.1-2, Attached Ex. 18, p.3).

Defendant Andrae changed Plaintiff's status from sick leave to AWOL on June 14, 2003, 2 full weeks after the leave started. (Attached Ex. 18, p.4).

Defendants issued Mr. Tesar a Letter of Warning in Lieu of a 14-Day Suspension for Failure to Properly Request Leave upon his return from FMLA-qualifying leave. (CompL, Ex. 4; Comp., a. 5).

In his verified complaint, Tesar asserted that at all relevant times his disabilities include, but were not limited Type-I diabetes and associated complications and complex PTSD with panic attacks, and at all times the defendant was aware of these disabilities. (Amend complaint ¶ 23 & 24). He further asserted under oath that in June 2003, he provided documentation to the defendant demonstrating his need for FMLA Leave and refelecting his eligibility for FMLA Leave and that the defendant refused to provide Plaintiff with FMLA Leave.

Further in the verified complaint, Tesar complained about discriminatory treatment based upon his disability and a hostile work environment alleging that the defendant's harassment of him included, but was not limited to, refusing to grant him leave for his father's death; refusing to answer sick leave requests; substantially increasing his work load in July, 2003, and then subjecting him to increased scrutiny and criticism for his inability to complete all of his regular duties and additional duties while at the same time insisting that he not claim any overtime and approving overtime for another supervisor; changing his assigned duty station and scheduled day off without the required 4 days notice; illegally disclosing the contents of his confidential medical information to other employees; talking about his disabilities to another employee, and requiring him to start punching the time clock for the first time in 20 years. (Amended Complaint ¶ 49-50)

The plaintiff further alleged in the verified complaint that

> "70. Plaintiff provided medical documentation to the United States Postal Service on June 3, 2003.
>
> 71. The documentation included a note from his physician and an FMLA certificate stating the need for Plaintiff's absence from work, date of occurrence, nature of the illness, probable duration, and the fact that Plaintiff was incapacitated.
>
> 72. The Defendants did not notify Plaintiff that the medical documentation that he provided was insufficient, demand additional medical documentation, or issue an order to report.  Nor

8

>     did the Defendants order Plaintiff to submit to a
>     Fitness for Duty Exam."

(Amended Complaint ¶ 70-72).

The records of the court indicate that discovery in this case was met with resistance by the pro se plaintiff and because of his inability to cooperate with discovery, and his assertions of an improper motive surrounding the defendant's attempts at discovery, as well as the egregious nature of his complaints, the court appointed counsel for the plaintiff.

Thereafter the plaintiff and his wife were deposed. At his deposition, the plaintiff testified that he had been seeing Dr. Laura Bloom for two or three months before June 3, 2003. He testified that prior to beginning his FMLA leave on June 4, 2003, he provided Andrae a hand-written letter from Dr. Bloom and an FMLA Certification, that during the period that he was off from work on properly requested FMLA leave he remained at home to "convalesce," sleeping every night in his own bed. He denied that the leave was for a planned vacation in June of 2003, denied that he had ever requested leave for a vacation during that time period, and denied that he actually traveled to Costa Rica for a vacation. (Def. Ex. B, pp. 29-34. See also, USPS 0143-0145).

Mrs. Tesar, at her deposition on January 25, 2006, gave sworn testimony that her husband remained at home and received visitors during the FMLA leave period, that he left the hand-written letter from Dr. Bloom and the FMLA Certification on

Andrae's desk prior to beginning his leave on June 4, 2003, that he had not planned a trip to Costa Rica or requested vacation leave for June of 2003, and that he did not go to Costa Rica in June of 2003. (Def. Ex. C, pp. 37-42).

However, at the end of May, 2003, Tesar had sought vacation or annual leave from his supervisor Rita Andrae, the Officer in Charge at the Hilton Head Post Office, for the period of June 4, 2003, through June 24, 2003, for a trip to Costa Rica. (Deposition of Rita Andrae, pp. 53-54; Def. Exhibit H). Ms. Andrae denied this leave request. Id. (USPS 0081).

Further it is undisputed that at 5:40 p.m., June 3, 2003, Tesar went to see the psychiatrist, Dr. Bloom. Tesar told Dr. Bloom his supervisor had denied his request for leave to go to Costa Rica. (Def. Ex. D, pp. 18, 20, 22). After twenty minutes in Dr. Bloom's Office on this, only his second visit[1], Tesar obtained from Dr. Bloom a note indicating that Tesar needed to be excused from work for thirty days. (USPS 0101)

Tesar left Dr. Bloom's office around 6:00 p.m. on June 3, 2003, went to the Hilton Head Island main post office and left the note from Dr. Bloom on Andrae's desk. Tesar did not at that

---

[1] In his deposition, Tesar testified that he had been seeing Dr. Bloom for two or three months at the time of his June 3, 2003, appointment. (Def. Ex. B, p. 28, l. 17 - p. 29, l. 6) (Tesar testifies that he had been seeing her "Two or three months probably, as I best recall"). In fact, Tesar had seen Dr. Bloom only once. See, Def. Ex. I, appointment list produced by Tesar.

time complete a Request for Notification of Absence ("Form 3971"), which is required for approved leave at USPS. (Def. Ex. B, pp. 28, l. 6-8, pp. 29, l. 21 through p. 32, l. 6-9). In her deposition, Andrae testified that upon finding Dr. Bloom's note on her desk when she returned to work on June 5, 2003, she repeatedly called Tesar's home to discuss his absence and his failure to complete proper forms, but was unsuccessful in reaching him. (Dep. of Andrae at pp. 62, 67; Def. Ex. H. See also, USPS 0077; USPS 081-82).

In a letter dated July 9, 2003, Dr. Bloom cleared Tesar to return to work starting July 10, 2003. (USPS 0102). She completed the USPS's Premedical Clearance and Return to Work Following Illness form on July 14, 2003. (USPS 0103-0104). Tesar returned to work on July 21, 2003.[2] (USPS 0066). When he returned to work, Tesar completed a Form 3971 requesting annual (vacation) leave in lieu of sick leave for June 4, 2003, through June 27, 2003, and June 28, 2003, through July 15, 2003. Andrae disapproved those requests. (USPS 0108-0111; 0113; Def. Ex. H, p. 76-78).

On August 1, 2003, Andrae issued Tesar a Proposed Letter of Warning in Lieu of a 14-Day Time-Off Suspension based on the

---

[2] Although Tesar was cleared to return to work on July 16, 2003, OIC Andrae was absent, and Tesar was placed on administrative leave from July 16, 2003, through July 18, 2003; July 19, 2003, was his scheduled day off, and he returned to work on July 21, 2003. (USPS 0066); Def. Exh. H, p. 74.

11

charge of Failure to Properly Request Leave.  The Manager of Post Office Operations for the South Georgia District, David Blackerby, issued a Letter of Decision on November 7, 2003, upholding the Letter of Warning.  (USPS 0077-0080).  Tesar's pay records indicate that Tesar's absence was charged to Leave Without Pay (LWOP).  (USPS 0105-0111; 0114).

Tesar contacted an EEO Counselor with regard to these matters on September 11, 2003, and filed a formal complaint on November 19, 2003.  (USPS 0015-0034).  During the administrative phase of this controversy, in order to bolster his claim that he properly requested FMLA leave, Tesar produced as evidence an FMLA Health Care Provider Certification which was typed, dated May 29, 2003, and signed by Dr. Bloom.  (USPS 0348-0351).  Finally, Tesar retained a psychiatric expert, Dr. James C. Ballenger, for an independent evaluation and was examined on August 11, 2006.  Tesar denied to Dr. Ballenger that he had taken a trip to Costa Rica in June of 2003.  (Def. Ex. L, p. 4).  As a result, Dr. Ballenger reported, "During this time off, he spent a great deal of time in bed, hung around doing chores, went to Charleston once, and was quite depressed."  Id.

Believing that the Plaintiff was being untruthful about his FMLA leave, the defendant subpoenaed the records of every airline serving Costa Rica from the Southern United States and contacted the Department of Homeland Security for information concerning

12

the use of the plaintiff's passport.

The defendant thereafter received from Delta Airlines records indicating that on April 7, 2003, Tesar purchased non-refundable tickets from Delta Airlines for a trip for himself, his wife, and their sons to Costa Rica. The trip was planned to begin on June 4, 2003, with a flight from Atlanta to Costa Rica, and was scheduled to end on June 24, 2003, with a return flight from Costa Rica to Atlanta. (Def. Ex. F and G). According to records of the Department of Homeland Security, on June 4, 2003, Tesar and his wife flew to Costa Rica and then returned on June 24, 2003, as scheduled. (Records of Department of Homeland Security, Border Crossings, Def. Ex. G. and Delta Airlines).

Finally, at her deposition, Dr. Bloom testified that she did not sign the pre-typed FMLA Certification which was dated May 29, 2003, and which Tesar deposed that he left on Andrae's desk on June 3, 2003, until sometime in July 2003, so that Tesar could not have submitted it on June 3, 2003, as he testified and verified by Tesar. (Def. Ex. D, p. 23, l. 1,5, p. 24, l. 13-17; see also, Def. Ex. D, p. 65 l. 21-p. 67, l. 8). Dr. Bloom also testified that she had not diagnosed Tesar with PTSD at that time, had not seen him as the treatment plan indicated on the FMLA Certification, had not done a treatment plan as indicated on the form, and had not consulted with Tesar's internist, Dr.

Jardula, as indicated on the signed form. Id. at pp 25-26.

After the Defendants produced to Tesar's court appointed counsel the information from Delta Airlines, the Department of Homeland Security, and Dr. Bloom, counsel advised the defendant that Tesar and his wife wished to make corrections to their depositions.

### **INVOLUNTARY DISMISSAL AS A SANCTION FOR MISCONDUCT**

The Supreme Court of the United States has held that accurate and truthful discovery is essential to the civil justice system, such that a violation of the requirement justifies a harsh penalty: "[f]alse testimony in a formal proceeding is intolerable ··· [and courts] must neither reward not condone such ··· 'flagrant affront[s]' to the truth-seeking function of adversary proceedings." ABF Freight Systems, Inc. v. NLRB, 510 U.S. 317, 323 (1994). Where a party commits such a flagrant affront to the court, it "should be severely sanctioned." Id.

It is well-established that federal courts can dismiss an action when a party seeks to deceive the court, thereby undermining the orderly administration of justice and the overall integrity of the judicial process. See, e.g., United States v. Shaffer Equipment Co., 11 F.3d 450, 462 (4th Cir. 1993). The Fourth Circuit in Shaffer held that a court's discretion to enter the sanction of dismissal must be balanced against a party's right to a "fair day in court". Thus, before entering a

dismissal sanction, the court should consider and balance the following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by the attorney, recognizing that courts seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. Shaffer, 11 F.3d at 462-463.

### DISCUSSION

A review of the record and relevant case law reveals that the USPS's motion to dismiss should be granted, that the plaintiff should pay the defendant's litigation costs, and that the matter should be referred to the United States Attorney for possible criminal prosecution.

The undersigned has carefully considered the factors delineated in Shaffer, supra, and will review them in seriatim.

First, Tesar's fraud has now been made patent and his direct culpability and blameworthiness beyond cavil. The falsity began at the beginning with the verified complaint containing false allegations that he delivered appropriate FMLA forms to the Andrae. The facts represented to the court by Tesar in his

motion for summary judgment are false, and indeed both the complaint and summary judgment motion appear written with an eye toward deception. Even after the appointment of counsel by the court, Tesar continued in his deception. Tesar's and his wife's sworn deposition testimony have been conclusively discredited, and Tesar even lied to his own expert, Dr. Ballenger, during his independent medical examination. The apparent critical additions to Dr. Bloom's writings submitted untimely to Tesar's supervisor are attributable only to Tesar and/or his wife. Moreover these lies and falsification of evidence pertain to the administrative requirements and key liability and damages aspects of his case, thereby making it even less possible that he and his wife made such misrepresentations accidentally.

On this record, there is no doubt that Tesar knowingly, willfully, and repeatedly testified falsely under oath about matters central to his case.

Dispositive of the second <u>Shaffer</u> factor is the fact that none of this is the fault of the attorneys appointed by the court to represent Tesar, but rather, lie solely at Tesar's feet. Indeed, the appointed counsel have performed professionally and in the highest tradition of the bar representing a client <u>pro bono</u>, under very difficult circumstances. In fact the attorneys themselves were also the victims of Tesar's dishonesty. As indicated at the oral argument on December 6, 2006, a motion to

be relieved as counsel in this matter would not be unjustified.

In sum, Tesar's culpability and blameworthiness justify sanctions under the first and second <u>Shaffer</u> factors.

The third <u>Shaffer</u> factor, "the prejudice to the judicial process and the administration of justice" weighs heavily in favor of sanctions. Sanctions are necessary to protect the integrity of the judicial process. As the Supreme Court has stated: "false testimony in a formal proceeding is intolerable." <u>ABF Freight Sys., Inc. v. N.L.R.B.</u>, 510 U.S. 317 at 323, 114 S.Ct. 835 (1994)(citing <u>United States v. Mandujano</u>, 425 U.S. 564, 576-577, 96 S.Ct. 1768, 1776, 48 L.Ed.2d 212 (1976); <u>United States v. Knox</u>, 396 U.S. 77, 90 S.Ct. 363, 24 L.Ed.2d 275 (1969); <u>Bryson v. United States</u>, 396 U.S. 64, 90 S.Ct. 355, 24 L.Ed.2d 264 (1969); <u>Dennis v. United States</u>, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966); <u>Kay v. United States</u>, 303 U.S. 1, 58 S.Ct. 468, 82 L.Ed. 607 (1938); <u>United States v. Kapp</u>, 302 U.S. 214, 58 S.Ct. 182, 82 L.Ed. 205 (1937); <u>Glickstein v. United States</u>, 222 U.S. 139, 141-142, 32 S.Ct. 71, 72-73, 56 L.Ed. 128 (1911).

It is difficult to imagine a more "direct affront to the court" than that present here. <u>See</u>, <u>Knapp v. Convergys Corp.</u>, 209 F.R.D. 439 at 443 (E.D. Mo. 2002) (when a party commits perjury, anything less than dismissal is not sufficient because it does not "remedy the 'direct affront to the court occasioned by [the Appellant's] willful perjury.'") (internal citation

omitted). Willful deceit and conduct otherwise utterly inconsistent with the orderly administration of justice cannot be condoned by the court.

Fourth, the prejudice to the victim, the USPS, supports the ultimate sanction. The central issue in the case is whether Tesar's version of the facts accurately recounts the facts surrounding his claims. Tesar clearly lied about material events in this case. Where, as here, the deceit relates to the merits of the controversy, the harm to the defendant should be presumed because it is intrinsic to our truthfinding adversary system and, therefore intangible and immeasurable. See, Dotson v. Bravo, 202 F.R.D. 559 (N.D. Ill. 2001). Had Tesar been wholly successful, instead of only partially successful, he would have foreclosed the USPS's opportunity to have a fair and complete trial. His conduct and his wife's conduct interfered with and obstructed the victim's constitutionally protected right of access to the judicial process, a process which clearly includes a party's right to full, complete, and truthful discovery.

Finally, the fifth and sixth Shaffer factors demonstrate that sanctions are necessary to send a clear message to other litigants that the risk of perjured testimony far outweighs any tactical benefit that might be gained by it, thereby deterring them from engaging in similar misconduct. Any sanction short of dismissal will have the opposite effect, as explained in Brady v.

18

United States, 877 F. Supp. 444, 453 (C.D. Ill. 1994) (quoting Pope v. Federal Exp. Corp., 138 F.R.D. 675, 683 (W.D. Mo. 1990)):

> Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

See also, Ford v. American Broadcasting Co., Inc., 101 F.R.D. 664 (S.D.N.Y. 1983) (court dismissed Appellant's case based on his perjury because "lesser sanctions ⋯ would be ineffectual and would virtually encourage the dishonest practices which plaintiff has imposed on his adversaries"). Further, because Tesar perpetrated fraud from the beginning of the extensive administrative proceedings, filed a false verified complaint with the court, and persisted in his dishonest conduct through the long discovery and motions practice here, he cannot be found to be credible on any factual issue. Tesar simply has no right to a trial on the merits.

In terms of the public interest implicated here, Judge Niemeyer wrote in Shaffer itself that the public must have an honest judicial system:

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. However, because no one has an exclusive insight into truth, the process depends on the adversarial presentation of evidence, precedent and custom,

19

> and argument to reasoned conclusions - all directed with unwavering effort to what, in good faith, is believed to be true on matters material to the disposition. Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process. As soon as the process falters in that respect, people are then justified in abandoning support for the system in favor of one where honesty is preeminent.

11 F.3d at 457-58 ("The system can provide no harbor for clever devices to divert the search, mislead opposing counsel or the court, or cover up what is necessary for justice in the end.").

Thus, in sum, it appears that the public interest is best served by dismissing the complaint.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that the defendant's motion to dismiss the action be granted, and the Tesars be ordered to pay to the defendant's attorneys the costs of litigation. It is also recommended that the matter be referred to the United States Attorney for possible criminal prosecution. Lastly, all other outstanding motions should be deemed moot.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

December 12, 2006