IN THE UNITED STATES DISTRICT COURT    RECEIVED
FOR THE DISTRICT OF SOUTH CAROLINA USDC CLERK, CHARLESTON, SC
BEAUFORT DIVISION

2007 SEP 21  A 7 31

William Tesar,                    )
          Plaintiff,              )
                         )
                         )
      v.                          )    Civil Action No. 9:05-00956-SB
                         )
John Potter, Postmaster General,  )    **ORDER**
United States Postal Service,      )
                         )
          Defendant.              )
_____   )

       This employment discrimination case is before the Court upon the Defendant's

motion to dismiss pursuant to Rule 41(b) of the Federal Rules of Civil Procedure and the

Defendant's motion for summary judgment.    The record contains a report and

recommendation ("R&R") of a United States Magistrate Judge, made in accordance with

28 U.S.C. § 636(b)(1)(B).  In the R&R, filed on December 12, 2006, Magistrate Judge

Robert S. Carr recommends that the Court grant the Defendant's motion to dismiss and

order the Plaintiff to pay the Defendant's attorneys the costs of litigation.  The Magistrate

Judge also recommends that the Court refer the matter to the United States Attorney for

possible criminal prosecution.

## BACKGROUND

I.    **Procedural History**

       Plaintiff William Tesar ("the Plaintiff" or "Tesar") commenced this action by filing a

*pro se* complaint on March 29, 2005, against the following Defendants: his former

employer, the United States Postal Service ("USPS"); his former supervisor, Rita S.

Andrae; and the manager of USPS operations for South Georgia, J. David Blackerby.  In

August of 2005, the Plaintiff filed an amended complaint, adding Defendant John Potter,

Postmaster General of the USPS. In his amended complaint, the Plaintiff asserts the following causes of action: (1) disability discrimination under the Rehabilitation Act; (2) disability harassment through a hostile work environment under the Rehabilitation Act; (3) failure to accommodate his disability under the Rehabilitation Act; (4) interference with rights under the Family Medical Leave Act ("FMLA"), and (5) retaliation for exercising FMLA rights. The Plaintiff's wife, Ann Barbour Tesar, also noticed her appearance as an "interested party."

On August 25, 2005, the Defendants filed an answer to the Plaintiff's amended complaint and moved for a second time to dismiss the individual Defendants for failure of service process under rule 12(b)(5) of the Federal Rules of Civil Procedure.[1] The Plaintiff was served a copy of the motion on August 26, 2005. The Plaintiff failed to respond to the motion within 34 days, and the Magistrate Judge issued an order instructing him to respond to the motion. The Plaintiff again failed to respond. Therefore, the Magistrate Judge issued an R&R on October 19, 2005, recommending that the Court dismiss Defendants Andrae and Blackerby. On November 16, 2005, this Court adopted the R&R and granted the motion to dismiss Defendants Andrae and Blackerby.



---

[1] Defendant USPS was served with the Plaintiff's initial complaint on May 5, 2005, and filed an answer on June 10, 2005. Defendant USPS also filed a motion to dismiss Defendants Andrae and Blackerby based upon insufficiency of process. On June 13, 2005, the Plaintiff was provided with a copy of the Defendant's motion along with a Roseboro order explaining to him the procedural rules related to motions to dismiss and motions for summary judgment. The Plaintiff filed a response on June 27, 2005, and again on July 1, 2005, as well as a motion for summary judgment with 99 pages of exhibits. Subsequently, at a scheduling and status conference before Magistrate Judge Carr, all dispositive motions were withdrawn with leave to refile, and the Plaintiff's motion to amend his complaint was granted. The Defendants' second motion to dismiss the individual Defendants for failure of service of process ensued.

Then, Defendant USPS moved to amend the scheduling order. The motion was granted, and on December 5, 2005, an amended scheduling order was filed.

Next, on December 13, 2005, Defendant USPS filed a motion to compel the Plaintiff to respond to the first set of interrogatories and first request to produce documents. The Magistrate Judge scheduled a hearing on the motion for January 11, 2006. Despite being given notice of the hearing, the Plaintiff failed to appear, and the Court was unable to reach him by the telephone number previously provided to the Court. Nevertheless, the Plaintiff did file an opposition to the motion by facsimile during the hearing; the Plaintiff dated the opposition December 16, 2005. On January 31, 2006, Defendant USPS filed a motion to strike discovery responses and for sanctions against the Plaintiff for a variety of reasons related to the Plaintiff's failure to participate in discovery.

Also, before the January 10th hearing, Defendant USPS filed a motion for a protective order in compliance with HIPPA to obtain access to the Plaintiff's medical records from Dr. Laura Rosenbaum-Bloom, the Plaintiff's and his wife's psychiatrist. On January 31, 2006, the USPS filed a motion to compel the deposition and production of documents by Dr. Bloom. In response to these motions, the Plaintiff's wife filed a motion for a protective order on February 1, 2006, and the following day, the Plaintiff filed an opposition to the motions as well as his own motion for a protective order. On February 6, 2006, the Magistrate Judge granted Defendant USPS's motion to compel discovery and motion for a HIPPA protective order. The Magistrate Judge's order was sent by registered mail to the Plaintiff at the address he provided to the Court; however, the order was returned marked "Refused."

Due to ongoing difficulty in the discovery process, Defendant USPS filed a motion

3

to extend discovery deadlines again. The Court granted the motion and extended the deadlines until February 24, 2006.

The Magistrate Judge scheduled a hearing on all outstanding motions for March 22, 2006, and the Clerk advised the Plaintiff of the scheduled hearing via telephone. The Plaintiff appeared at the hearing, and all outstanding motions were resolved. Additionally, the Court appointed Richard A. Ferrier, Esquire, of the law firm of Nelson Mullins Riley & Scarborough, LLP, to represent the Plaintiff in this action. On April 25, 2006, the Defendant withdrew its motion to strike, and the Court granted the Defendant's motion to compel the deposition of Dr. Bloom. On June 30, 2006, the Plaintiff named Dr. James C. Ballenger, a psychiatrist, as an expert witness.

On August 18, 2006, a fourth amended scheduling order was entered on the motion of the parties. Then, on August 21, 2006, the Magistrate Judge denied Defendant USPS's motion to consolidate this action with another employment discrimination action filed by the Plaintiff against the USPS.

On August 25, 2006, the Plaintiff moved to compel more complete discovery responses. The Court granted the Plaintiff's motion during a hearing held on September 26, 2006. Then, on September 29, 2006, the Plaintiff filed another motion to compel. The parties filed a joint motion to amend the scheduling order on October 5, 2006, seeking to extend the deadline to file dispositive motions until October 31, 2006. The Magistrate Judge granted the parties' joint motion to amend the scheduling order on October 6, 2006.

On October 26, 2006, the Defendant filed the 500-page record of the administrative proceedings on this matter, and on October 31, 2006, the Defendant filed the present dispositive motions. The Plaintiff responded to the motions, and the Magistrate Judge

4

heard oral argument on December 6, 2006.

On December 12, 2006, the Magistrate Judge issued an R&R recommending that the Court grant the Defendant's motion to dismiss and order the Plaintiff to pay the Defendant's attorneys the costs of litigation. The Magistrate Judge also recommended that the Court refer the matter to the United States Attorney for possible criminal prosecution.

Two days later, on December 14, 2006, Plaintiff's counsel filed a motion to be relieved as counsel on the grounds that continuing to represent the Plaintiff would be in direct conflict with the duties under the South Carolina Rules of Professional Conduct. Along with the motion to be relieved, counsel filed a motion for an extension of time in which to file objections to the R&R. The Court granted both motions, allowing the Plaintiff until February 6, 2007, to file written objections to the R&R. The Plaintiff, proceeding *pro se*, filed his objections to the R&R on February 12, 2007, and the Defendant filed a reply to the Plaintiff's objections.

**I.    Factual History**

At all times relevant to the complaint, the Plaintiff worked as a supervisor, EAS-18, at the Hilton Head Island Post Office, where he served as supervisor of the city carriers at the main office and supervisor of the rural carriers at a satellite office called Fairfield Station.

In his complaint, the Plaintiff asserts claims of disability discrimination in employment pursuant to the Rehabilitation Act of 1973 and violations of the Family Medical Leave Act. In his motion for summary judgment, filed on July 11, 2005, the Plaintiff sets forth the following as "undisputed material facts":

. . .

3.   Plaintiff provided the Postal Service with written and verbal notice of his need for FMLA-qualifying leave for the period beginning June 3, 2003, and continuing for 30 days. (Compl., Pl. Ex.1, pp. 1-5; Attached Ex. 6)

4.   Defendant Andrae was required to send the plaintiff a PS-3971 "Postal Service Leave Request" and USPS Publication 71 "Notice for Employees Requesting Leave for Conditions Covered by the Family and Medical Leave Act."  ELM 513.332  (Attached Ex. 20, p.3, 513.332; Attached Ex. 21, p. 4, 515.51).

5.   Defendant Andrae did not send Mr. Tesar the required notice nor has she ever alleged that she sent the required notice. Defendant Andrae alleges only that she tried to call Mr. Tesar. (Attached Ex. 19, p.2)

6.   Defendant Andrae initially approved Tesar's leave and allowed him to substitute paid sick leave for the period beginning June 3, 2003 through June 14, 2003. (Attached Ex. 9, p. 2, Attached Ex. 10, pp. 1-2, Attached Ex.18, p. 3).

7.   Defendant Andrae changed Plaintiff's status from sick leave to AWOL on June 14, 2003, **2 full weeks** after the leave started. (Attached Ex. 18, p. 4).

8.   Defendant issued Mr Tesar a Letter of Warning in Lieu of a 14-day Suspension for Failure to Properly Request Leave upon his return from FMLA-qualifying leave. (Compl., Ex. 4; Compl., Ex. 5)

(Pl.'s Mot. for Summ. Judg. at 4-5.) (emphasis in original).

The Plaintiff lists his disabilities as Type-I diabetes and associated complications and Complex Post Traumatic Stress Syndrome with panic attacks. The Plaintiff asserts that the Defendant was aware of his disabilities at all times relevant to his complaint. Additionally, the Plaintiff asserted under oath that he provided documentation to the Defendant in June of 2003 demonstrating his need for FMLA leave and reflecting his eligibility for FMLA leave, yet the Defendant refused to grant the Plaintiff FMLA leave.

Also in the verified amended complaint, the Plaintiff complains about discriminatory treatment based on his disability as well as a hostile work environment. The Plaintiff states

6

that the Defendant's harassment of him included, but was not limited to the following: refusing to grant him leave for his father's death; refusing to answer sick leave requests; substantially increasing his work load in July of 2003 and then subjecting him to heightened scrutiny and criticism for his inability to complete all of his regular duties as well as the additional duties, while at the same time insisting that he not claim any overtime even though the Defendant approved overtime for other supervisors; changing his assigned duty station and scheduled day off without providing the required four days notice; illegally disclosing the contents of his confidential medical information to other employees; talking about his disabilities to another employee; and requiring him to start punching the time clock for the first time in 20 years.  (Am. Compl. ¶¶ 49-50.)

The Plaintiff further alleges in his verified amended complaint that:

70.    Plaintiff provided medical documentation to the United States Postal Service on June 3, 2003.

71.    The documentation included a note from his physician and an FMLA certificate stating the need for [P]laintiff's absence from work, date of occurrence, nature of the illness, probable duration, and the fact that the Plaintiff was incapacitated.

72.    The Defendants did not notify the Plaintiff that the medical documentation that he provided was insufficient, demand additional medical documentation, or issue an order to report.  Nor did the Defendants order the Plaintiff to submit to a Fitness for Duty Exam.

(Am. Compl. ¶¶ 70-72.)

The records of the Court indicate that discovery in this case was met with resistance by the *pro se* Plaintiff.  The Court appointed counsel for the Plaintiff because of his inability to cooperate with discovery and his assertion of an improper motive surrounding the Defendant's attempts at discovery, as well as the egregious nature of his complaints.

The Plaintiff and his wife were deposed in January of 2006.[2]  At the Plaintiff's

deposition, he testified that he had been seeing Dr. Bloom for two or three months before

June 3, 2003.  The Plaintiff testified that prior to beginning his FMLA Leave on June 4,

2003, he provided Andrae with a hand-written letter from Dr. Bloom and an FMLA

Certification.[3]  He further testified that during the time when he was off from work on

properly-requested FMLA leave, he remained at home to "convalesce," sleeping every

night in his own bed.  The Plaintiff denied that the leave was for a planned vacation in June

of 2003 and denied that he had ever requested leave for a vacation during that time period.

Furthermore, the Plaintiff denied that he actually traveled to Costa Rica for a vacation

---

[2]  The R&R implies that the Plaintiff and his wife were deposed after the Court appointed counsel for the Plaintiff, and the Plaintiff objects to this, asserting that his deposition occurred on January 8, 2006, and counsel was appointed on March 22, 2006. The Court agrees with the Defendant that whether the Plaintiff was represented by counsel at his deposition does not affect the outcome of this case; however, the Court corrects the inaccuracy in the R&R and notes that the Plaintiff was deposed before the Court appointed him counsel.

[3]  The Plaintiff objects to this statement because at his deposition he stated that he *thought* he provided the FMLA Certification at the same time he provided the letter from his doctor.

Q.    Is it your contention that you provided FMLA documentation other than -- I'm not talking about the letter, but FMLA documentation from your physician before you went out on leave in June?
A.    Yes, ma'am.  Yes.
Q.    Did you do that at the same time that you gave the letter from your doctor?
A.    As I said before, I'm not sure, but I think, in going through this, it was.

(Pl. Depo. at 137, ll. 17-25.)  The Court finds this objection to be without merit as the Plaintiff has continued to argue that he provided the FMLA certification and the doctor's note to his supervisor <u>prior to</u> taking leave, regardless of whether he provided the FMLA documentation at the same time he provided the doctor's note. Dr. Bloom testified that she did not sign the pre-typed FMLA certification, which the Plaintiff dated May 29, 2003, until some time in July of 2003, so the Plaintiff could not have submitted it prior to his taking leave in June.

during that time period.

The Plaintiff's wife gave sworn testimony during her deposition that her husband remained at home and received visitors during the FMLA leave period and that he left the hand-written letter from Dr. Bloom and the FMLA Certification on Andrae's desk prior to beginning his leave on June 4, 2003. The Plaintiff's wife testified that her husband had not planned a trip to Costa Rica or requested vacation leave for June of 2003; she also denied that he went to Costa Rica in June of 2003.

Despite the Plaintiff's and his wife's testimony, the record indicates that near the end of May of 2003, the Plaintiff had sought annual leave from Andrae for the period of June 4, 2003, through June 24, 2003, for a trip to Costa Rica. Andrae denied the Plaintiff's request for leave.

Additionally, it is undisputed that the Plaintiff went to see Dr. Bloom at 5:40 p.m. on June 3, 2003. The Plaintiff informed Dr. Bloom that his supervisor denied his request for leave to go to Costa Rica. After twenty minutes in Dr. Bloom's office, on only his second visit, the Plaintiff obtained a note from Dr. Bloom indicating that he needed to be excused from work for thirty days.

The Plaintiff left Dr. Bloom's office at around 6:00 p.m. on June 3, 2003, and went to the Hilton Head main post office and left the note from Dr. Bloom on Andrae's desk. The Plaintiff did not at that time complete a Request for Notification of Absence ("Form 3971"), which is required for approved leave at the USPS. Andrae testified during her deposition that upon finding the note from Dr. Bloom on her desk when she returned to work on June 5, 2003, she repeatedly called the Plaintiff's house to discuss his absence and his failure to complete the proper forms; however, she was unable to reach him.

9

In a letter dated July 9, 2003, Dr. Bloom cleared the Plaintiff to return to work starting July 10, 2003. Dr. Bloom completed the USPS's Premedical Clearance and Return to Work Following Illness form on July 14, 2003. The Plaintiff returned to work on July 21, 2003.[4] Upon his return to work, the Plaintiff completed a Form 3971 requesting annual (vacation) leave in lieu of sick leave for June 4, 2003, through June 27, 2003, and June 28, 2003, through July 15, 2003. Andrae disapproved the Plaintiff's requests.

On August 1, 2003, Andrae issued the Plaintiff a Proposed Letter of Warning in Lieu of a 14-day Time-Off Suspension based on the charge of Failure to Properly Request Leave. On November 7, 2003, David Blackerby, the Manager of Post Office Operations for the South Georgia District, issued a Letter of Decision upholding the Letter of Warning. The Plaintiff's pay records indicate that his absence was charged to leave without pay.

On September 11, 2003, the Plaintiff contacted an EEO Counselor regarding these matters, and he filed a formal complaint on November 19, 2003. During the administrative phase, the Plaintiff produced as evidence an FMLA Health Care Provider Certification, which was typed, dated May 29, 2003, and signed by Dr. Bloom.[5] The Plaintiff also



_____

[4] Although the Plaintiff was cleared to return to work on July 16, 2003, Andrae was absent, and Tesar was placed on administrative leave from July 16, 2003, through July 18, 2003; July 19, 2003, was his scheduled day off, and he returned to work on July 21, 2003.

[5] The Plaintiff objects to the Magistrate Judge's statement that the Plaintiff produced this FMLA Health Care Provider Certification "in order to bolster his claim that he properly requested FMLA leave." (R&R at 12.) He states that the "Defendants have only asserted that this document was signed in July, 2003, and not left with the hand-written doctor's note on June 3, 2003. Further the doctor's hand-written note alone was sufficient notice that the leave was FMLA-qualifying." (Pl. Obj. at 3.) The Court finds the Plaintiff's objection without merit as this statement by the Magistrate Judge has no bearing on the ultimate issue, namely, the Plaintiff's fraud on the Court. In any event, the record supports the Magistrate Judge's statement.

10

retained a psychiatric expert, Dr. James C. Ballenger, to obtain an independent evaluation, which occurred on August 11, 2006. During the examination, the Plaintiff denied that he had taken a trip to Costa Rica in June of 2003. As a result, Dr. Ballenger reported: "During this time off, he spent a great deal of time in bed, hung around doing chores, went to Charleston once, and was quite depressed."

Suspecting that the Plaintiff was being untruthful about his FMLA leave, the Defendant subpoenaed the records of every airline serving Costa Rica from the southern United States and contacted the Department of Homeland Security for information concerning the use of the Plaintiff's passport. Thereafter, the Defendant received records from Delta Airlines indicating that on April 7, 2003, the Plaintiff purchased non-refundable tickets from Delta Airlines for a trip for himself, his wife, and their sons to Costa Rica.[6] According to the airline records, the trip was planned to begin June 4, 2003, with a flight from Atlanta to Costa Rica, and was scheduled to conclude on June 24, 2003, with a return flight from Costa Rica to Atlanta. Furthermore, according to the records of the Department of Homeland Security, on June 4, 2003, the Plaintiff and his wife flew to Costa Rica and then returned on June 24, 2003, as scheduled.

Finally, at her deposition, Dr. Bloom testified that she did not sign the pre-typed FMLA Certification, which was dated May, 29, 2003, until some time in July of 2003, so the

---

[6] The Plaintiff objects that he did not *purchase* any tickets on April 7, 2003, but that instead, his wife called Delta on April 7, 2003, and requested 3 "award tickets" for the first of June 2003. The Plaintiff states that his wife was charged $28.60 per ticket for taxes, and he asserts that award tickets are valid for 1 year from the date of issue and they are not non-refundable. The Plaintiff also states that he purchased the fourth ticket at the Delta gate on June 4, 2003. The Court finds this objection to be wholly without merit, as whether the Plaintiff purchased the tickets or received "award tickets" is irrelevant to the Court's evaluation of the Plaintiff's fraud on the Court.

Plaintiff could not have left it on Andrae's desk on June 3, 2003, as he testified as having done. Dr. Bloom further testified that she had not diagnosed the Plaintiff with PTSD at that time, that she had not seen him as the treatment plan indicated, that she had not done a treatment plan as indicated on the form, and that she had not consulted with the Plaintiff's internist, Dr. Jardula, as indicated on the signed form.[7]

After the Defendant produced the information from Delta Airlines, the Department of Homeland Security, and Dr. Bloom, the Plaintiff's court-appointed counsel advised the Defendant that the Plaintiff and his wife wished to make corrections to their depositions.[8]

## STANDARD OF REVIEW

### I.    The Magistrate Judge's R&R

This Court is charged with conducting a *de novo* review of any portion of the R&R to which a specific objection is registered and may accept, reject, or modify, in whole or in part, the recommendations contained in that R&R. 28 U.S.C. § 636 (b)(1). Any written objection must specifically identify the portions of the R&R to which the objection is made and the basis for the objection. Id. After a review of the entire record, the R&R, and the

---

[7] The Plaintiff objects to this statement, asserting that Dr. Bloom stated that she considered diagnosing the Plaintiff with PTSD but did not write it down and that she had spoken with the Plaintiff's internist but did not remember when she did so. The Court finds that a review of the record supports the Magistrate Judge's statement. Furthermore, the Court agrees with the Defendant that the Plaintiff's statement that his wife typed the FMLA Certification, evidence not in the record before, actually adds more support to the R&R.

[8] The Plaintiff objects to this statement and asserts that the Defendant's counsel had stated that she wanted to reconvene the depositions of the Plaintiff and his wife, but when she received the corrections, she replied that she would not be recalling the Plaintiff or his wife. The Court finds this objection without merit; it is irrelevant whether defense counsel reconvened the deposition or not. Moreover, the record clearly demonstrates that the Plaintiff did not recant his testimony about his trip to Costa Rica until he was faced with irrefutable evidence of his lies.

Plaintiff's objections, the Court adopts the R&R.

## DISCUSSION

The Fourth Circuit Court of Appeals, "[m]indful of the strong public policy that cases be decided on the merits," set forth several factors for consideration before dismissing a case for committing discovery abuses or fraud on the Court.  United States v. Shaffer Equip. Co., 11 F.3d 450, 462 (4th Cir. 1993).  In Shaffer, the court stated:

> [B]efore exercising the inherent power to dismiss a case, a court must consider the following factors: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest.

Id. at 462-63.

In his objections to the R&R, the Plaintiff objects to the Magistrate Judge's analysis of the Shaffer factors.[9]  Therefore, the Court will address the Shaffer factors as well as the Plaintiff's objections in order.

## 1.     The Degree of the Wrongdoer's Culpability

The first factor for the Court to consider is the Plaintiff's degree of culpability.  Here, as the Magistrate Judge noted, the record indicates that the falsity began at the beginning of this case with the Plaintiff's verified complaint and continued thereafter until he was faced with irrefutable evidence of his deception.  The Plaintiff lied in his motion for summary judgment,

---

[9] The Plaintiff also objects to various statements contained in the "facts" section of the R&R; in the interest of accuracy and efficiency, the Court has already addressed these factual objections in footnotes 2-3 and 5-8.

and both his and his wife's deposition testimony has been conclusively discredited. In fact, the Plaintiff lied to his own expert during his independent medical examination. Moreover, the Plaintiff's lies and misrepresentations go to the heart of the liability and damages issues in this case, thereby making it even less probable that he and his wife made such misrepresentations accidentally. In sum, then, the Court has no difficulty concluding that the Plaintiff is highly culpable given that he knowingly and willfully repeated false testimony.

In his objections, the Plaintiff asserts that he was not represented by counsel during his deposition and that he did not act maliciously or with adequate understanding of the consequences of his actions. He states that once he was appointed counsel, the misstatements were corrected. In addition, the Plaintiff states that he was on medication that impaired his ability to drive, reason, and remember.

The Court finds these assertions incredible in light of the record. First, the fact that the Plaintiff was not represented by counsel when he lied does little to salvage his credibility, and it is unreasonable for him to now assert that he did not have an adequate understanding of the consequences of his actions. Moreover, the record belies the Plaintiff's assertion that the misstatements were corrected once he was appointed counsel, as the record indicates that the Plaintiff's counsel also fell prey to the Plaintiff's dishonesty in the beginning. In short, the Court finds ample support in the record for the Magistrate Judge's determination that the Plaintiff's culpability supports the dismissal of this case.

2.    **The Extent of the Client's Blameworthiness if the Wrongful Conduct is Committed by his Attorney**

The Magistrate Judge concluded that the second factor also supports the dismissal of the Plaintiff's case, as none of the misfeasance or malfeasance is attributable to the

14

Plaintiff's court-appointed counsel.  Rather, the fault lies solely at the feet of the Plaintiff. Indeed, the Plaintiff seems to recognize that the wrongful conduct was not committed by his attorney[s], and he does not object to the Magistrate Judge's analysis of this factor.

### 3.    The Prejudice to the Judicial Process and the Administration of Justice

Like the first two Shaffer factors, the third factor also weighs in favor of dismissal.  As the Magistrate Judge stated, "[i]t is difficult to imagine a more 'direct affront to the court' than that present here."  (R&R at 17 (citing Knapp v. Convergys Corp., 209 F.R.D. 439, 443 (E.D. Mo. 2002) (stating that when a party commits perjury, anything less than dismissal is not sufficient because it does not "remedy the 'direct affront to the court occasioned by [the Appellant's] willful perjury.'") (internal citations omitted)); see also Pope v. Federal Express Corp., 138 F.R.D. 675, 683 (M.D. Mo. 1990) (indicating there is no greater prejudice to the judicial system than fraud upon the Court); ABF Freight Sys., Inc. v. N.L.R.B., 510 U.S. 317, 323 (1994) (citing United States v. Mandujano, 425 U.S. 564, 576-77 (1976)); United States v. Knox, 396 U.S. 64 (1969); Dennis v. United States, 384 U.S. 855 (1966); Kay v. United States, 303 U.S. 1 (1938); United States v. Kapp, 302 U.S. 214 (1937); Glickstein v. United States, 222 U.S. 139 (1911).

In his objections, the Plaintiff asserts that the "Defendants learned of the misstatements through their ordinary discovery efforts, Plaintiff confirmed the misstatements, corrected the record, and didn't oppose the Defendants['] plan to reconvene his deposition, all within the discovery period."  (Pl.'s Obj. at 6.)  The Plaintiff also states that the "Defendants were able to question the Plaintiff's expert witness and treating physician about the misstatements and their effect on these witnesses' opinions."  (Obj. at 6.)  The Plaintiff states that his misconduct "did not affect or alter the course of the litigation," and therefore,

"dismissal is excessive in this case."

The Court wholly disagrees with the Plaintiff's characterization that his misconduct did not affect or alter the litigation. Moreover, the fact that the Defendants could have reconvened certain depositions or re-questioned certain witnesses regarding the misstatements does not change the fact that the Court simply cannot condone the Plaintiff's "[w]illful deceit and conduct otherwise utterly inconsistent with the orderly administration of justice." (R&R at 18.) Accordingly, the Court agrees with the Magistrate Judge that this factor strongly supports the dismissal of this case.

## 4.    The Prejudice to the Victim

The fourth Shaffer factor also supports dismissal of this case. After all, dishonest litigants have a distinct advantage over their honest adversaries, for "[t]he victimized opponent winds up . . . consuming substantial resources to respond to and 'undo' the victimizers lies and distortions." Chemtall Inc. v. CITI CHEM, Inc., 992 F. Supp. 1390, 1409 (S.D. Ga. 1998). Here, the Defendant was forced to conduct lengthy and unnecessary third-party discovery, which included subpoenaing the records of every airline servicing Costa Rica and the records of the Department of Homeland Security, in order to fully expose the Plaintiff's dishonesty. Also, as the Magistrate Judge concluded, had the Plaintiff been wholly successful instead of only partially successful, he would have foreclosed the USPS's opportunity to have a fair and complete trial. Therefore, the Plaintiff's conduct, as well as that of his wife, interfered with and obstructed the victim's constitutionally-protected rights to a fair trial and complete and truthful discovery, and this factor supports dismissal of the Plaintiff's case.

In his objections, the Plaintiff asserts that the Defendant was not prejudiced in any way by his misstatements because it is irrelevant where the Plaintiff spent his leave. Instead, the

Plaintiff asserts that the main issue in this case, as agreed on by both parties, is that the Plaintiff forgot to fill out a Postal Service leave request. The Plaintiff further asserts that the jury did not hear any testimony that would prejudice them against the Defendant.

After a review of the record, the Court disagrees with the Plaintiff's assertion that the Defendant was not prejudiced. As previously stated, not only did the Plaintiff's dishonesty force the Defendant to expend otherwise unnecessary time and money to expose the Plaintiff's dishonesty, but also, the Plaintiff's dishonesty interfered with the Defendant's constitutionally-protected rights. Furthermore, the fact that no jury has been prejudiced at this point is immaterial because the Plaintiff's conduct has caused prejudice to the judicial process and the administration of justice, as previously set forth.

**5.    The Availability of Other Sanctions to Rectify the Wrong by Punishing Culpable Persons, Compensating Harmed Persons, and Deterring Similar Conduct in the Future**

Next, the Court must consider the "availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future." Shaffer, 11 F.3d at 462-63. When a party commits perjury, sanctions are necessary to ensure that other litigants fully understand that the risk of entering perjured testimony far exceeds any tactical advantage that may be afforded from it, thus deterring them from engaging in similar misconduct. Any sanction less than dismissal will have the opposite effect, as explained in Brady v. United States:

> Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

877 F. Supp. 444, 453 (C.D. Ill. 1994) (quoting Pope v. Federal Exp. Corp., 138 F.R.D. 675,

17

683 (W.D. Mo. 1990)).

In his objections, the Plaintiff asserts that several lesser, effective sanctions are available, such as awarding the Defendant the costs associated with subpoenaing the airline and Department of Homeland Security records, the costs of his deposition, a separate jury instruction regarding the Plaintiff's deposition testimony, or striking his FMLA claims.  The Plaintiff asserts that the dismissal of this action would be an abuse of discretion.

Here, the Court disagrees with the Plaintiff that these suggested lesser sanctions would effectively rectify the wrong.  Instead, the Court agrees with the Magistrate Judge that "because Tesar perpetrated fraud from the beginning of the extensive administrative proceedings, filed a false verified complaint with the court, and persisted in his dishonest conduct through the long discovery and motions practice here, he cannot be found to be credible on any factual issue" and he "simply has no right to a trial on the merits."  (R&R at 19.)  Indeed, the Plaintiff has demonstrated that dismissal is necessary so that he (as well as other litigants) may completely understand the full effect of his perjury.

**6.    The Public Interest**

Finally, the Court must consider the public interest.  As stated In Shaffer, the public must have an honest judicial system:

> Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice.  However, because no one has an exclusive insight into the truth, the process depends on the adversarial presentation of evidence, precedent and custom, and argument to reasoned conclusions—all directed with unwavering effort to what, in good faith is believed to be true on matters material t the disposition.  Even the slightest accommodation of deceit or lack of candor in any material respect quickly erodes the validity of the process.  As soon as the process falters in that respect, people are then justified in abandoning support for the system in favor of one where honesty in preeminent.



18

11 F.3d at 457.

In his objections, the Plaintiff asserts that this case involves many issues of disability discrimination and hostile work environment as evidenced by the USPS employees who testified about the work environment. The Plaintiff states that "[d]ismissal would be a slap in the face to the employees who risked retaliation to testify." (Obj. at 9.) He also asserts that Andrae committed perjury during her deposition and that his credibility is a matter for the jury to consider.

The Court is not the least bit persuaded by the Plaintiff's arguments. And although the Plaintiff may be correct that his case involves important claims concerning the USPS, the fact remains that the Plaintiff chose to be untruthful throughout the administrative and judicial proceedings and to compromise his claims as well as the testimony of those who corroborated his claims. To excuse the Plaintiff's deceitful conduct would erode the validity of the judicial system, and as a result, the Court finds that the public interest is best served by the dismissal of this case.

## CONCLUSION

For the reasons stated herein, it is

**ORDERED** that the Defendant's motion to dismiss the Plaintiff's complaint is granted; the Plaintiff is ordered to pay the Defendant's attorneys the costs of litigation; and any remaining motions are hereby deemed moot.

**IT IS SO ORDERED.**

The Honorable Sol Blatt, Jr.
Senior United States District Judge

September **20**, 2007
Charleston, South Carolina



19